Andrew J. Guzzo (HI-SBN 010586)
KELLY & CRANDALL, PLC
7 Waterfront Plaza
500 Ala Moana Blvd., Suite 400
Honolulu, HI 96813
Telephone: 808-543-1122
Email: aguzzo@kellyandcrandall.com
*Counsel for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SOUKSAMLANE JERMAN, | : |
| | : Civil Case No. 17-602 |
| Plaintiff, | : |
| | : |
| v. | : **CLASS ACTION COMPLAINT** |
| | : |
| EQUIFAX INFORMATION | : **TRIAL BY JURY IS DEMANDED** |
| SERVICES, LLC, | : |
| | : |
| Defendant. | : |
| _____ | : |

### CLASS ACTION COMPLAINT

Plaintiff, Souksamlane Jerman, *on behalf of herself and all consumers similarly situated*, files this Complaint against Defendant Equifax Information Services, LLC ("Equifax"). In support thereof, Plaintiff alleges as follows:

### PRELIMINARY STATEMENT

1. This is an action for actual, statutory and punitive damages, costs, and attorney's fees brought against Equifax pursuant to the Fair Credit Reporting Act

("FCRA"), 15 U.S.C. § 1681 *et seq*. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA in 1970 to ensure the "confidentiality, accuracy, relevancy, and proper utilization" of credit reports. 15 U.S.C. § 1681(b).

2.    To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including § 1681e(b), which is one of the cornerstone provisions of the FCRA. Whenever a consumer reporting agency ("CRA") prepares a consumer report, § 1681e(b) requires the CRA to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. § 1681e(b). This section imposes a high, and often disregarded, standard on CRAs. *See, e.g., Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011) (breaking down the requirements of § 1681e(b), and explaining that " 'assure' means 'to make sure or certain: put beyond all doubt,'" "'[m]aximum' means the 'greatest in quantity or highest degree attainable[,]' and 'possible' means something 'falling within the bounds of what may be done, occur or be conceived'" (quoting *Webster's Third New International Dictionary* 133, 1396, 1771 (1993)).

3.    Equifax is a consumer-reporting agency that compiles and maintains

files on consumers on a nationwide basis. As part of this process, Equifax uses an automated and systematic procedure to gather and report derogatory public records in credit reports, such as tax liens and judgments recorded with the Hawaii Bureau of Conveyances. However, Equifax does not follow similar procedures to gather updated information when the tax lien or judgment is released, satisfied, vacated, or otherwise removed. Equifax's failure to timely gather updated information from the Bureau of Conveyances is a violation of 15 U.S.C. § 1681e(b) because Equifax has not implemented reasonable procedures to ensure the maximum possible accuracy in the preparation of the consumer reports that it furnished regarding Plaintiff and the class members.

## JURISDICTION

4. The Court has jurisdiction under the FCRA, 15 U.S.C. § 1681p and 28 U.S.C. § 1331. Venue is proper in this Court under 28 U.S.C. § 1391(b) as Plaintiff is a resident of Hawaii and a substantial part of the events giving rise to the claim occurred in this District.

## PARTIES

5. Plaintiff is a natural person and a "consumer" as defined by § 1681a(c) of the FCRA.

6. Equifax is a foreign limited liability company authorized to do business

in Hawaii. Equifax is a "consumer reporting agency" as defined in 15 U.S.C. §1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d) to third parties.

## FACTUAL ALLEGATIONS

**A.     Equifax's Procedures.**

7.     Unlike credit accounts, Equifax affirmatively seeks out and purchases public records data, including Hawaii tax liens and civil judgments, to include this derogatory information in the credit reports it sells.

8.     Equifax proactively gathers and disseminates this derogatory information even though there is nothing in the FCRA that affirmatively requires it to do so.

9.     Equifax does not follow reasonable procedures to gather information when the tax liens or judgments are released, satisfied, vacated, appealed, or similarly dismissed, with the same rigor and process that it employs to gather information initially.

10.    Upon information and belief, Equifax uses a third party as a vendor to collect information regarding judgments and tax liens.

11.    Upon information and belief, Equifax's vendor was obligated to collect

and provide all affirmative tax liens and judgments under its contract with Equifax. However, in contrast, the vendor was only obligated to updates and dispositions if the vendor determined it was "commercially reasonable" to do so.

12. As a matter of common policy, Equifax and its vendors rarely collect any tax lien or judgment disposition information.

13. In short, Equifax published public records data that it knew would be inaccurate if a release, satisfaction, dismissal, vacatur, or appeal had occurred—relying on consumers to clean up their own files via the dispute process after learning of the inaccuracy rather than paying to have these dispositions collected with the same vigor that it collected records of the initial entry of judgment.

14. As a matter of common practice, Equifax does not routinely collect this information even though Equifax has been sued repeatedly for its failure to adopt reasonable procedures to timely gather and report updated public record information. *See, e.g., Soutter v. Equifax Info. Servs., LLC,* 307 F.R.D. 183, 191 (E.D. Va. 2015); *Ceccone v. Equifax Info. Servs., LLC*, 2015 WL 221720, at *1 (D.D.C. Jan. 15, 2015); *Williams v. Experian Info. Solutions, Inc.*, Case No. 1:13-cv-1102 (E.D. Va. 2013); *Beattie v. Experian Info. Solutions, Inc.*, Case No. 1:13-cv-1195 (E.D. Va. 2013); *Gudauskas v. Equifax Info. Servs., LLC*, Case No. 1:14-cv-01307 (E.D. Va. 2014); *Knuth v. Toyota Motor Credit Corp.*, 1:15-cv-349 (E.D. Va. 2015).

15. Upon information and belief, the methods and processes used by Equifax to gather releases, satisfactions, vacaturs, and dismissals from the Hawaii Bureau of Conveyances was materially the same for the previous five years.

16. At all times pertinent to this Complaint, Equifax's conduct regarding the collection of disposition information was willful and carried out in reckless disregard for a consumer's rights as set forth under the FCRA. By example only and without limitation, Equifax's conduct is willful because it was intentionally accomplished through intended procedures; it had knowledge of its violation through other lawsuits in other jurisdictions but it did nothing to rectify the problem in Hawaii; and as Equifax's diligence in collecting and reporting derogatory information is believed by it to be of greater economic value to its paying customers than "disposition" information that demonstrated that the debt was no longer owed to those customers.

17. As a result of Equifax's conduct, Plaintiff and the putative class members suffered particularized and concrete injuries, including damages to their reputations, reductions to their credit scores, and increased risks that they would be denied credit.

B. **Plaintiff's Experience.**

18. In June 2017, Plaintiff obtained a copy of her credit report from Equifax

and discovered that Equifax was reporting an outstanding tax lien against her recorded with the Hawaii Bureau of Conveyances.

19. As described above, Equifax's reporting of the tax lien was inaccurate and occurred because Equifax failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports it publishes and maintains regarding consumers.

20. In Plaintiff's instance, if Equifax had followed such procedures, Equifax would have reported an update to the public record showing that the tax lien had been released on July 23, 2012.

21. Indeed, the information regarding the release of Plaintiff's tax lien was publically available on the Internet through the Document Search & Ordering System maintained by the Hawaii Bureau of Conveyances—an easily accessible database to Equifax.

22. However, consistent with its procedures, Equifax made no effort to update and correct the tax lien information from July 23, 2012, through July 2017.

23. During this time, Equifax published Plaintiff's credit report to multiple third parties, damaging her reputation and causing increased interest rates, including when Plaintiff applied for credit with Bank of Hawaii in February 2016.

## COUNT ONE:
## 15 U.S.C. §1681e(b)
## Class Claim

24. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

25. **The 1681e(b) Class**. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action individually and on behalf of a class initially defined as follows ("the 1681e(b) Class"):

> All natural persons who meet every one of the following definitional requirements: (1) the computer database of the Hawaii Bureau of Conveyances shows that the person was subject to a tax lien or judgment; (2) the computer database of the Hawaii Bureau of Conveyances shows that the tax lien or judgment was released, satisfied, withdrawn, vacated, or otherwise dismissed on or before December 20, 2013; and (3) Equifax's records note that a credit report containing the outstanding judgment or lien was furnished at least thirty (30) days after the disposition was filed in the office of the Hawaii Bureau of Conveyances.

26. **Numerosity**. Upon information and belief, Plaintiff alleges that the FCRA Class is so numerous that joinder of the claims of all class members is impractical. The names and addresses of the class members are identifiable through documents maintained by Equifax and through publically available records of the Hawaii Bureau of Conveyances, and the class members may be notified of the pendency of this action by published and/or mailed notice.

27. **Existence and Predominance of Common Questions of Law and**

**Fact**. Common questions of law and fact exist as to all putative class members. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things: (a) whether Equifax adopted procedures that collected and reported updates to liens that were less systematic and effective than those it used to initially collect and report the liens; (b) whether this conduct constituted a violation of the FCRA; and (c) whether the violation was negligent, reckless, knowing, or intentionally committed in conscious disregard of the rights of Plaintiff and putative class members.

28.　**Typicality**. Plaintiff's claims are typical of the claims of each putative class member and all are based on the same facts and legal theories. Plaintiff, as every putative class member, alleges a violation of the same FCRA provision, 15 U.S.C. §1681e(b). This claim challenges the credit reporting procedures of Equifax and does not depend on any individualized facts. Upon information and belief, Equifax obtains all of its Hawaii Bureau of Conveyances records under the same contract from the same vendor. Equifax's notice and knowledge of the challenged reporting problem is the same for Plaintiff as for the putative class. For purposes of class certification, Plaintiff seeks only statutory and punitive damages. Plaintiff would seek individual or actual damages only if class certification is

denied. In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the class.

29.   **Adequacy**. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiff nor her counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of her responsibilities to the putative class and has accepted such responsibilities.

30.   Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a.   As alleged above, the questions of law or fact common to the members of the classes predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual damages issues. The statutory and punitive damages sought by each member are such that the individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Equifax's conduct. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

  b. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually. Further, most consumers affected by Equifax's conduct described above are likely unaware of their rights under the law or of whom they could find to represent them in federal litigation. Individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law for every similarly situated consumer.

 31. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding Plaintiff and putative class members.

 32. As a result of Equifax's misconduct, Plaintiff and putative class members suffered damages to their reputations, reductions to credit scores, and increased risk that they would be denied credit.

 33. Equifax's violation of 15 U.S.C. § 1681e(b) was willful, rendering Equifax liable pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax was

negligent entitling Plaintiff to recover under 15 U.S.C. § 1681o.

33. Plaintiff and the putative class members are entitled to recover statutory damages, punitive damages, costs, and attorneys' fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

WHEREFORE, Plaintiff, on behalf of herself and the putative class members, moves for class certification and for statutory and punitive damages, as well as her attorney's fees and costs against Equifax and such other relief the Court deems just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED.**

Date: December 21, 2017

Respectfully submitted,
**SOUKSAMLANE JERMAN**

By: ___/s/ Andrew J. Guzzo_____
    Counsel

Andrew J. Guzzo (HI-SBN 010586)
KELLY & CRANDALL, PLC
7 Waterfront Plaza
500 Ala Moana Blvd., Suite 400
Honolulu, HI 96813
Telephone: 808-543-1122
Email: aguzzo@kellyandcrandall.com
*Counsel for Plaintiff*